IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEPHEN MICHAEL SNEADE,
    Petitioner,

v.                                            Civil Action No. 3:13-cv-00398-JAG

MARIE VARGO,
    Respondent.

## OPINION

In April 1999, a judge sentenced Stephen Michael Sneade to life without parole for a murder he committed when he was sixteen, plus fifty years for the accompanying robbery and six years for related firearm convictions. Sneade filed a petition for writ of habeas corpus, asking this Court to vacate his sentence and order a new sentencing proceeding because a sentence of life without parole for a juvenile homicide offender, without consideration of his youth and related circumstances, violates the Eighth Amendment. The respondent moved to dismiss. For the reasons stated below, the Court denies the respondent's motion to dismiss and conditionally grants Sneade's petition as to his entire sentence.

## I. BACKGROUND

In 1997, at the age of sixteen, Sneade shot and killed the co-owner of a local store during a robbery. In 1999, a jury in the Brunswick County Circuit Court convicted Sneade of capital murder, robbery, use of a firearm in the commission of a murder, and use of a firearm in the commission of a robbery. After hearing aggravating and mitigating evidence, the jury recommended a sentence of life without parole on the capital murder conviction. The presiding judge accepted this recommendation and, after an additional hearing on aggravating and mitigating circumstances regarding the robbery, sentenced Sneade to life without parole on the capital murder

conviction, plus fifty years on the robbery and six years on the two firearm convictions, all to run consecutively.

In June 2013, Sneade filed a petition for writ of habeas corpus in light of the Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012), which held unconstitutional two mandatory life without parole sentences for juvenile homicide offenders. The Court stayed this case until the Supreme Court decided in 2016 that courts should apply *Miller* retroactively to cases on collateral review. *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). The Court then lifted the stay and, after additional briefing, held a hearing on the petition on June 7, 2016.

After the hearing, the Court held the petition in abeyance pending the Virginia Supreme Court's decision in *Jones v. Commonwealth*, 293 Va. 29, 795 S.E.2d 705 (2017). On February 2, 2017, *Jones* announced that Virginia's sentencing scheme does not mandate life without parole for juvenile homicide offenders. 293 Va. at 41, 795 S.E.2d at 712. The Court again stayed this action until the United States Supreme Court denied certiorari in *Jones* on October 2, 2017. *Jones v. Virginia*, 138 S. Ct. 81 (Oct. 2, 2017) (mem.). Finally, on June 21, 2018, the Fourth Circuit decided that *Miller* and *Montgomery* apply regardless of a state's sentencing scheme, meaning their principles govern any case where a juvenile homicide offender received life without parole. *Malvo v. Mathena*, 893 F.3d 265 (4th Cir. 2018) ("Malvo II").

## II. DISCUSSION[1]

A federal court may consider a petition for writ of habeas corpus from a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In this case, Sneade challenges the constitutionality

---

[1] When, as in this case, a state court has not reviewed a petitioner's claim on the merits, federal habeas courts review the claim de novo. *Weeks v. Angelone*, 176 F.3d 249, 258 (4th Cir. 1999).

2

of his entire state sentence (i.e., his sentences for the murder, robbery, and firearm convictions) in light of *Miller* and *Montgomery*, and asks for a resentencing hearing. As a threshold matter, Sneade has met the procedural requirements for habeas petitions, namely timeliness[2] and exhaustion.[3]

## A. *Capital Murder Sentence*

The Court first looks to the rule announced in *Miller* and *Montgomery*, and then determines whether Sneade's capital murder sentence is unconstitutional under that rule.

### 1. *Miller* and *Montgomery*

In *Miller*, the Supreme Court found that two mandatory life without parole sentences for juvenile offenders violated "the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. at 465. Although *Miller* did not foreclose sentences of life without parole for juvenile homicide offenders, it required the sentencer "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480. The Court emphasized "individualized sentencing" for "the law's most serious punishments." *Id.* at 483.

---

[2] If a petitioner seeks to assert a newly recognized constitutional right, he has one year to file his petition from when the Supreme Court recognized that right, "if the right has been . . . made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). In this case, the Supreme Court newly recognized a constitutional right in *Miller* on June 25, 2012, and confirmed the retroactive applicability of that right in *Montgomery*. Sneade timely filed his petition on June 21, 2013.

[3] Prior to filing a petition for writ of habeas corpus in federal court, a petitioner must have exhausted his remedies in state court. *See* 28 U.S.C. § 2254(b). A petitioner will satisfy the exhaustion requirement if "there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). The time for Sneade to file a habeas petition in state court has expired. *See* Va. Code Ann. § 8.01-654(A)(2). Moreover, Sneade cannot file a motion to vacate his sentence as void ab initio under Virginia law. A motion to vacate filed years after a sentencing cannot address a *Miller* violation because such a violation "does not render the sentence void ab initio but merely voidable." *Jones*, 293 Va. at 54, 795 S.E.2d at 720.

In *Montgomery*, the Supreme Court held that *Miller* announced a substantive rule of constitutional law, giving its rule retroactive effect in cases on collateral review. *Montgomery* explained, "*Miller* did bar life without parole . . . for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." 136 S. Ct. at 734 (emphasis added). This rare juvenile offender "exhibits . . . irretrievable depravity," and his "crime reflects irreparable corruption." *Id.* at 733–34 (describing the chance of finding such a juvenile offender as "uncommon") (quoting *Miller*, 567 U.S. at 471, 479–80).

Procedurally, "*Miller* requires a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence." *Id.* at 734. The "attendant characteristics" of youth include the following:

> First, children have a "lack of maturity and an underdeveloped sense of responsibility," leading to recklessness, impulsivity, and heedless risk-taking. Second, children "are more vulnerable to negative influences and outside pressures," including from their family and peers; they have limited "control over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievable depravity."

*Id.* at 733 (quoting *Miller*, 567 U.S. at 471; *Roper v. Simmons*, 543 U.S. 551, 569–70 (2005)); *see also Miller*, 567 U.S. at 477 (summarizing the attendant characteristics of youth as "immaturity, impetuosity, and failure to appreciate risks and consequences"). The sentencer must also consider whether the juvenile offender's crime "reflects 'unfortunate yet transient immaturity.'" *Montgomery*, 136 S. Ct. at 734 (quoting *Miller*, 567 U.S. at 479). After considering these factors, a court may sentence a juvenile offender to life without parole only when his crime indicates permanent incorrigibility. *See id.* at 734–35. A court should impose a lesser sentence when a juvenile's crime reflects transient immaturity. *See id.*; *see also Malvo II*, 893 F.3d at 271–72

4

(recognizing that juveniles as a class do not deserve the most severe punishments, although courts may find a rare few juveniles permanently incorrigible).

## 2. *Miller* and *Montgomery* Apply to Sneade's Case

At the time of Sneade's sentencing in 1999, Virginia law classified capital murder as a Class 1 felony and authorized only two punishments for Class 1 felonies: death or imprisonment for life. Va. Code Ann. § 18.2-10(a) (1999); *see id.* § 18.2-31 (defining capital murder as a Class 1 felony). Virginia abolished parole in 1995, meaning that life imprisonment for a Class 1 felony committed after January 1, 1995, does not include the possibility of parole.[4] *Id.* § 53.1-165.1. Accordingly, at the time of Sneade's sentencing, the only possible sentences under the statutory scheme were death[5] or life without parole. *Id.* § 19.2–264.4(A). The Virginia Supreme Court nevertheless determined that the Commonwealth's capital murder sentencing scheme does not mandate life without parole because trial courts can suspend life sentences. *Jones*, 293 Va. at 41, 795 S.E.2d at 712 (citing Va. Code Ann. § 19.2-303). It made this ruling despite the understanding of Virginia practitioners and judges that life meant life. And it made this ruling without citing a single case where a mandatory life sentence was suspended.

The record in this case indicates that Sneade's sentencing judge understood Virginia's sentencing scheme as mandatory.[6] *See Malvo II*, 893 F.3d at 274 ("[I]t is far from clear that anyone

---

[4] Virginia law does allow for geriatric parole if prisoners meet certain criteria, but this does not apply to persons serving a sentence for a Class 1 felony. Va. Code Ann. § 53.1-40.01.

[5] In 2005, the Supreme Court held that the Eighth Amendment prohibits the death penalty for juvenile offenders. *Roper*, 543 U.S. at 578.

[6] The judge instructed the jury that they "must decide whether the defendant shall be sentenced to death or to imprisonment for life"—allowing for no other options—and that "[t]he words 'imprisonment for life' mean imprisonment for life without possibility of parole." (Brunswick Cty. R. at 286–90.) The judge also commented at a separate sentencing hearing that the jury imposed "one of the two permitted punishments upon a conviction for capital murder; one being life in the penitentiary, the other being death." (Sentencing Hr'g Tr. at 20:21–21:4.)

5

involved in [the petitioner's] prosecutions actually understood at the time that Virginia trial courts retained their ordinary suspension authority following a conviction for capital murder."). *Jones'* characterization of Virginia's penalty scheme, however, does not dictate the outcome here. *Malvo II*, 893 F.3d at 274. The rule announced in *Miller* and *Montgomery* applies to all situations in which juveniles receive life without parole, regardless of state sentencing structure. *Id.* In other words, the discretionary or mandatory nature of a life sentence does not determine whether a juvenile has suffered an Eighth Amendment violation. *Dumas v. Clarke*, No. 2:13-cv-398, 2017 WL 3446640, at *6 (E.D. Va. July 14, 2017), *report and recommendation adopted*, 2017 WL 3446526 (Aug. 10, 2017).

*Miller* and *Montgomery* do not require that a court first ask what type of sentencing scheme a particular state used, and then only apply their requirements to mandatory schemes. *Malvo v. Mathena*, 254 F. Supp. 3d 820, 827–28 (E.D. Va. 2017) ("Malvo I"). Instead, "*Montgomery* stated clearly that, under *Miller*, the Eighth Amendment bars life-without-parole sentences for all but those rare juvenile offenders whose crimes reflect permanent incorrigibility." *Malvo II*, 893 F.3d at 274 (emphasis added). Mandatory sentencing schemes necessarily contravene *Miller*'s dictate, but courts also violate juveniles' rights when they impose discretionary life without parole sentences absent the individualized sentencing considerations that *Miller* requires. *Id.* Thus, *Miller* and *Montgomery* apply to Sneade.

### 3. *Miller* and *Montgomery* Require a Resentencing in Sneade's Case

After convicting Sneade, the jury heard aggravating and mitigating evidence regarding sentencing on the capital murder conviction.[7] The trial judge clearly understood that the jury could

---

[7] *See* Sentencing Hr'g Tr. at 20:21–21:4. The Court does not have access to a transcript of the jury hearing, so it cannot determine exactly what evidence the jury considered. Nevertheless, this transcript would not change the outcome.

6

impose only one of two sentences for Sneade's crime: death or life imprisonment without parole. (*See* Brunswick Cty. R. at 286–90.) Accordingly, the court did not instruct the jury on the need to consider Sneade's youth and attendant characteristics, as *Miller* and *Montgomery* require. (*See id.*) Faced with the choice of "whether the defendant shall be sentenced to death or to imprisonment for life," (Brunswick Cty. R. at 288–90), the jury recommended, and the judge accepted, a sentence of life without parole.

At a separate sentencing hearing, the trial judge found the life sentence that the jury recommended for the capital murder conviction "just and fair." (Sentencing Hr'g Tr. at 21:17.) While the judge did mention age as a mitigating factor (*id.* at 22:12–18), the transcript does not reflect any contemplation of the "attendant characteristics" of youth. *Montgomery*, 136 S. Ct. at 733–34. Sentencing judges must do more than consider age; they must determine whether the juvenile exhibits "irretrievable depravity" versus "'unfortunate yet transient immaturity.'" *Id.* (quoting *Miller*, 567 U.S. at 479). Here, the jury opted for the lesser sentence of life without parole, instead of death, which suggests that Sneade might not fall into the category of "the rarest juvenile offenders, those whose crimes reflect permanent incorrigibility." *Montgomery*, 136 S. Ct. at 734; *see also Crawford v. Pearson*, 270 F. Supp. 3d 902, 905 n.2 (E.D. Va. 2017), *appeal docketed*, No. 17-7211 (4th Cir. Sept. 13, 2017) (granting resentencing when the trial judge did not determine the juvenile defendant's incorrigibility). Sneade deserves a hearing where the sentencer must consider the appropriate factors before lumping Sneade into that category.

Accordingly, because Sneade's sentencing did not comport with the constitutional requirements set forth in *Miller* and *Montgomery* for a juvenile homicide offender, his capital murder sentence is unconstitutional and requires resentencing.

## B. *Robbery and Firearm Sentences*

In addition to life without parole, Sneade received a fifty-year sentence for robbery, three years for using a firearm to commit murder, and three more years for using a firearm to commit robbery, for a total of fifty-six years. In light of granting Sneade's petition as to his capital murder sentence, the Court must now consider whether *Miller* and *Montgomery* require a resentencing as to his entire sentence.[8]

A reviewing court that alters one piece of a sentence may vacate the whole sentence to enable the trial court to "reconfigure the sentencing plan." *Bear Cloud v. State*, 334 P.3d 132, 141 (Wyo. 2014) (quoting *Pepper v. United States*, 562 U.S. 476, 507 (2011)). In *Bear Cloud*, the court remanded "the entire sentencing package," not just the first-degree murder conviction, for resentencing according to *Miller*. *Id.* Relying on *Bear Cloud*, a court in this district found that the Eighth Amendment requires this result, and followed suit in *Dumas*. 2017 WL 3446640, at *11. Likewise, the resentencing court in this case cannot comply with the mandate of *Miller* and *Montgomery* unless it considers Sneade's entire sentence.

Sneade's convictions arose from "one criminal episode," and the sentencing court did not "fully consider" his robbery and firearm sentences because Sneade had already received life without parole for his capital murder conviction. *Dumas*, 2017 WL 3446640, at *11. In other words, Sneade's life without parole sentence tainted the judge's decision with respect to his other convictions. *See id.* (citing *Sen v. State*, 301 P.3d 106, 110 (Wyo. 2013)). In fact, while sentencing

---

[8] The Eighth Amendment prohibits life without parole sentences for juvenile non-homicide offenders, *Graham v. Florida*, 560 U.S. 48, 82 (2010), but courts have split regarding *Graham*'s application to lengthy term-of-years sentences, *Dumas*, 2017 WL 3446640, at *10 (collecting cases). In this case, the Court already determined that Sneade deserves resentencing on his life without parole sentence under *Miller* and *Montgomery*. Therefore, the relevant question is not whether *Graham* applies to his other offenses, but rather whether the capital murder resentencing should include his <u>entire</u> sentence. *See id.*

8

Sneade on the robbery conviction, the judge observed that he "must also consider the fact that the jury has imposed a life sentence; that is, a life sentence without parole." (Sentencing Hr'g Tr. at 23:21–23.) Moreover, the judge noted that, due to the jury's sentence, Sneade had already "lost his freedom," (*id.* at 23:21–24:1), and the capital murder served as the primary conviction for sentencing purposes (*id.* at 19:20–24).

Because Sneade's capital murder sentence undoubtedly affected his other sentences, the circuit court cannot properly resentence him without considering his entire sentence. *Dumas*, 2017 WL 3446640, at *11. If the resentencer only considers Sneade's youth and attendant circumstances as to his murder sentence, the total resentence will not reflect these considerations. *See id.* In other words, even if the circuit court alters Sneade's sentence for the capital murder conviction, he would still have to serve fifty-six years on top of that, which "would provide meaningless relief as a practical matter." *Id.*

Moreover, resentencing Sneade on just one conviction would contradict the pointed finding in *Montgomery* that the Eighth Amendment's "central substantive guarantee" protects "against disproportionate punishment," and this protection "goes far beyond the manner of determining a defendant's sentence." 136 S. Ct. at 732–33. Courts cannot impose the "most severe penalties on juvenile offenders . . . as though they [are] not children." *Miller*, 567 U.S. at 474. "[C]hildren are constitutionally different from adults for purposes of sentencing," meaning that children have "distinctive (and transitory) mental traits and environmental vulnerabilities," which are not crime-specific. *Id.* at 471, 473. Thus, to fulfill the Supreme Court's clear intent to account for these "central considerations" when sentencing a juvenile offender, the circuit court must reevaluate Sneade's robbery and firearm sentences as well. *See id.* at 474.

## III. CONCLUSION

The Court does not treat lightly the terrible crimes that Sneade committed, or their permanent effects. Nevertheless, Sneade's sentencing did not comport with the constitutional requirements for juvenile offenders set forth in *Miller* and *Montgomery*. Thus, the state court must resentence Sneade to determine whether his crimes reflect "permanent incorrigibility" versus "the transient immaturity of youth." *Montgomery*, 136 S. Ct. at 734. Furthermore, to preserve Sneade's Eighth Amendment rights under *Miller* and *Montgomery*, the circuit court also must resentence him on his robbery and firearm convictions. For the foregoing reasons, the Court will deny the respondent's motion to dismiss and conditionally grant Sneade a writ of habeas corpus.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: <u>27 Dec. 2018</u>
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge